**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS W. GRAVER,** | : | **No. 3:13cv1811** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner** | : | |
| **Of Social Security Administration,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is the appeal of Plaintiff Thomas W.

Graver of the Defendant Commissioner of Social Security Administration's

denial of his applications for Social Security Disability Insurance Benefits

(hereinafter "DIB") and Supplemental Security Income Benefits (hereinafter

"SSI").  The matter has been fully briefed and is ripe for disposition.

## Background

On October 5, 2009, plaintiff was involved in an accident.  The

mountain bike he was riding was struck by a car.  (Doc. 11, Administrative

Record (hereinafter "R.") at 236).  The accident caused injury to plaintiff's

left leg/knee, and initially he was diagnosed with a comminuted fracture[1] of

---

[1]  A "comminuted fracture" is "a fracture in which the bone fragments into several pieces."  See WebMD website,

his left fibula, a bone in his lower leg.  (R. at 242).  He was placed in a knee immobilizer.  (R. at 236-46).  In addition to the fibula fracture, plaintiff also tore his anterior cruciate ligament (ACL), his medial collateral ligament (MCL) and his lateral meniscus.  (R. at 249).  After several months of physical therapy, on April 9, 2010,  plaintiff had reconstructive surgery on his knee in which the ligaments were also repaired.  (R. at 257-58).  After the surgery, he returned to physical therapy from which he was discharged in September 2010.  (R. 421-23). Plaintiff continued to follow up with his orthopedic surgeon, and he also continued to walk with the assistance of a cane.

In July 2010, plaintiff applied for SSI and DIB.  He reported that he became disabled on the date of the bicycle accident, October 5, 2009. (R. at 111, 118).  He stated that he was unable to work because of the injuries he sustained in the accident.  (R. at 59).

On December 28, 2010, the applications for SSI and DIB were denied.  Plaintiff then filed a written request for a hearing before an Administrative Law Judge (hereinafter "ALJ").  On February 14, 2012, ALJ Ronald Sweeda held a video conference hearing.  On March 16, 2010, the

---

http://www.webmd.com/a-to-z-guides/understanding-fractures-basic-information.  (Last accessed Apr. 24, 2014).

ALJ issued a decision finding that plaintiff was not "disabled" and thus not

entitled to DIB or SSI benefits.  (R. at 16-24).  Plaintiff then requested

review from the Social Security Administration's Appeals Council.  (R. at

11).  Appeals Council denied the request for review, leaving the ALJ's

decision as the final decision of the Defendant Commissioner of Social

Security. (R. at 1-3).  Plaintiff then filed the instant appeal by filing a

complaint in this court.  (Doc. 1, Compl.).

**Jurisdiction**

The court has federal question jurisdiction over this Social Security

Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final

determination of the Commissioner of Social Security after a hearing under

paragraph (1) shall be subject to judicial review as provided in section

405(g) of this title to the same extent as the Commissioner's final

determinations under section 405 of this title."); see also 42 U.S.C. §

405(g) ("Any individual, after any final decision of the Commissioner of

Social Security made after a hearing to which he was a party, irrespective

of the amount in controversy, may obtain a review of such decision by a

civil action commenced within sixty days after the mailing to him of notice

of such decision or within such further time as the Commissioner of Social

Security may allow.  Such action shall be brought in the district court of the

United States for the judicial district in which the plaintiff resides, or has his

principal place of business . . . .").

**Standard of Review**

In reviewing a Social Security appeal, this court must determine

whether "substantial evidence" supports the ALJ's decision.  See, 42

U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d

Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The

United States Supreme Court has defined "substantial evidence" as "such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620

(1966).  The Third Circuit Court of Appeals has explained that "substantial

evidence has been defined as 'more than a mere scintilla;' it means 'such

relevant evidence as a reasonable mind might accept as adequate.'"

Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely

because evidence may exist to support the opposite conclusion.  See 42

U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)

(stating that courts may not weigh the evidence or substitute its own

4

conclusion for those of the fact-finder);  Fargnoli v. Massanari, 247 F.3d

34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are

supported by substantial evidence, courts are bound by those findings,

even if they would have decided the factual inquiry differently).  In an

adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of

drawing two inconsistent conclusions from the evidence does not prevent

an administrative agency's finding from being supported by substantial

evidence."  Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other

evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981)

and "must take into account whatever in the record fairly detracts from its

weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).

"When a conflict in the evidence exists, the ALJ may choose whom to

credit but 'cannot reject evidence for no reason or for the wrong reason."

Plummer, 186 F.3d at  429 (quoting Mason v. Shalala, 994 F.2d 1058,

1066 (3d Cir. 1993).   The Commissioner must indicate which evidence

was accepted, which evidence was rejected, and the reasons for rejecting

certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d

Cir. 2008).  Therefore, a court reviewing the decision of the Commissioner

must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968,

970 (3d Cir. 1981).

## Discussion

To receive disability benefits, the plaintiff must demonstrate an

"inability to engage in any **substantial gainful activity** by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A) (emphasis added).  An individual is incapable of engaging in

"substantial gainful activity" when "his physical or mental impairment or

impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates SSI and DIB claims with a five-step

sequential analysis.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  This

analysis requires the Commissioner to consider, in sequence, whether a

claimant (1) is engaging in substantial gainful activity; (2) has an

6

impairment, or combination of impairments, that is severe; (3) has an

impairment or combination of impairments that meets or equals the

requirements of a "listed impairment"; (4) has the "residual functional

capacity" to return to his or her past work; and (5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §§

404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v).  Prior to addressing step

four, the ALJ must determine the claimant's residual functional capacity.[2]

20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  A plaintiff's residual

functional capacity is "the most [the plaintiff] can still do despite [his]

limitations."  20 C.F.R. § 404.1545(a)(1).

In applying the five-step sequential analysis in the instant case, the

ALJ found the following: Step 1-Plaintiff has not engaged in substantial

gainful activity since the accident on October 5, 2009 (R at 18); Step 2-

Plaintiff has the following severe impairments: status post ACL repair,

status post fibula fracture, and obesity (Id.); and Step 3- The claimant does

not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments.  (Id.).

The ALJ next determined plaintiff has the residual functional capacity

---

[2]  If the claimant has the residual functional capacity to do his or her
past relevant work, the claimant is not disabled.

(hereinafter "RFC")  to:

> perform a narrow range of light work.  The [plaintiff] can lift or carry 20 pounds occasionally and 10 pounds frequently.  He is not limited in sitting.  He can stand/walk up to 2 hours in an 8-hour workday.  He is capable of work that does not involve climbing, kneeling and crawling.  The [plaintiff] must avoid all exposure to temperature extremes, vibration or high humidity.

(R. at 19).  Then the ALJ proceeded to Step 4 of the sequential evaluation and concluded that plaintiff is unable to perform any past relevant work. (R. at 22).[3]

Gerald Keating, an impartial Vocational Expert, testified at the hearing regarding jobs someone with plaintiff's limitations, as defined by the ALJ, could perform.  Based upon the Vocational Expert's testimony, the ALJ concluded that considering the plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform.[4]   Such jobs include assembler, telephone receptionist and surveillance monitor.  (R. at 23). Thus, the ALJ found that the plaintiff is not disabled from employment, but

---

[3]  The plaintiff's past work included work as an assembler, carpet installer, gas station attendant, landscaper and assembler.  (R. at 22).

[4]  Plaintiff was forty-seven years of age at the time of the hearing. (R. at 57).

8

rather,"is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (R. at 23).

The plaintiff's appeal alleges that the ALJ erred in the following three ways: 1) The Vocational Expert's testimony did not provide substantial evidence to support the defendant's decision that plaintiff is not "disabled"; 2) The ALJ did not evaluate all relevant evidence of record; and 3) The ALJ did not determine properly plaintiff's residual functional capacity.  We will discuss these issues below.

## I. Vocational Expert's testimony/RFC determination

The first issue raised by the plaintiff is whether the Vocational Expert's testimony provided substantial evidence to support a finding that plaintiff is not disabled.  The third issue raised by the plaintiff is whether the ALJ properly determined plaintiff's RFC.  These two issues are related, and we will discuss them as together.

In the instant case, the Vocational Expert testified that jobs exist in both the national area and central Pennsylvania area that someone with the plaintiff's limitations could perform.  Such jobs include telephone receptionist, surveillance monitor and assembler.  (R. at 23).  Defendant points to the Vocational Expert's testimony as substantial evidence that

9

plaintiff is not disabled from working.

The plaintiff alleges that the Vocational Expert's testimony does not provide substantial evidence to support the Commissioner's decision because it is does not take into account that the plaintiff depends on a cane to walk and stand.  The ALJ did not provide this fact in the hypothetical question asked to the Vocational Expert, nor did he include it in his RFC determination.  After a careful review, we agree with the plaintiff.

First, it is important to review the evidence that plaintiff presented regarding his use of a cane.   At the hearing, plaintiff testified that he uses the cane all the time.  (R. at 66).  He indicated that he uses the cane mainly for stability.  (Id.)  He also testified that his doctor suggested the use of the cane.  Plaintiff stated as follows:

> I was on crutches for I'd say nine months, and I did
> have - - after I got off the crutches, I was doing the
> physical therapy and I did have a walker for a while
> to get around my apartment without the crutches.
> And my doctor, Dr. Reish, he says, all right, let's go
> with a cane and see how you get around with a
> cane once he gave me the brace with hinges in it.
> He says, let's see what you could do with this, and
> you know, he says, I want to get you on a cane and
> see how things go.

(Id.)

10

Additionally, plaintiff's physical therapy notes indicate that he uses a single point cane.  (R. at 262-63, 272, 276, 283, 286, 300, 315, 317, 320, 328-29, 335, 337).   For example, one of his physical therapists, Shawna Pringle, DPT, noted that plaintiff "was . . . instructed on proper use and placement of the cane which should be used on the non-involved side." (R. at 263).   The notes also indicate that plaintiff was still using a cane on the date that he was discharged from physical therapy treatment September 13, 2010.  (R. at 421).  As late as March 2011, plaintiff's orthopedic surgeon , Matthew W. Reish, M.D., stated that plaintiff "uses a cane to ambulate." (R. at 424).[5]

The ALJ himself took notice in his decision, that plaintiff uses a cane. (Doc. 11-2, at 21).   Despite all this evidence, and despite mentioning plaintiff's use of a cane, the ALJ did not consider the cane when determining what plaintiff can still do - his RFC - nor did he provide an explanation for not mentioning the cane.

Specifically, the ALJ found the plaintiff's RFC as follows:

> The [plaintiff] has the residual functional capacity to perform a narrow range of light work. The [plaintiff] can lift or carry 20 pounds occasionally and 10 pounds frequently.  He is not limited in sitting.  He

---

[5]  This is the final medical record in plaintiff's case from Dr. Reish.

> can stand/walk up to 2 hours in an 8-hour workday.
> He is capable of work that does not involve
> climbing, kneeling and crawling.  The [plaintiff] must
> avoid exposure to temperature extremes, vibration
> or high humidity.

(R. at 19).  After determining the plaintiff's RFC, the ALJ "asked the

vocational expert whether jobs exist in the national economy for an

individual with the [plaintiff's] age, education, work experience, and residual

functional capacity."  (R. at 23).   The ALJ questioned the Vocational

Expert regarding the RFC, which did not include the cane, and the ALJ did

not add anything in his question to the Vocational Expert to inform him that

he should consider that the plaintiff uses a cane.  Thus, because the

vocational expert based his conclusion on the ALJ's RFC, if the RFC is

faulty, the VE's opinion does not provide substantial evidence to support

the ALJ's conclusion that the plaintiff is not disabled.

The law provides that "the ALJ must accurately convey to the

vocational expert all of a claimant's *credibly established limitations.*"

Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (internal citation

omitted).  In the instant case, the ALJ did not do so.  Specifically, the ALJ

did not include plaintiff's need for a cane in determining the RFC and he

did not identify to the Vocational Expert that plaintiff used a cane.  Use of

12

the cane indicates a limitation in the plaintiff's walking and standing and

also indicates that he would have limited use of the arm in which he holds

the cane.   Accordingly, we find the ALJ's RFC was faulty and the

Vocational Expert's testimony, based on a faulty RFC, does not provide

substantial evidence to support the ALJ's decision.

This case is similar to the Western District of Pennsylvania case,

Butler v. Astrue, Civ. A. No. 11-376, 2012 WL 1252758  (W.D. Pa. Apr. 13,

2012).  In that case, the plaintiff suffered from certain mental and physical

limitations, and due to his physical limitations, he needed a cane to

ambulate.  Id. at *1-2.  The court explained that "the issue of whether a

cane is a medical necessity for [plaintiff] is critical in assessing his RFC."

Id. at *7 n.18.

Defendant argues that plaintiff did not establish at the hearing that

the cane was "medically required".  He submitted no medical evidence to

demonstrate the need for a cane or medical evidence detailing the

circumstances for which his cane is allegedly required.  Rather, plaintiff

merely points to observations from various medical sources that he in fact

uses a cane.  In other words, the medical providers noted that plaintiff was

using a cane, but they did not recommend it or prescribe it or indicate that

13

he "needed" it.  As the cane is not medically required, it need not be

considered according to the defendant.  After a careful review, we disagree

with the defendant.

Under Social Security Rulings, a cane is an example of a "hand-held

assistive device".  Social Security Ruling 96-9p discusses such devices as

follows:

> To find that a hand-held assistive device is
> medically required, there must be medical
> documentation establishing the need for a hand-
> held assistive device to aid in walking or standing,
> and describing the circumstances for which it is
> needed (i.e., whether all the time, periodically, or
> only in certain situations; distance and terrain; and
> other relevant information).  The adjudicator must
> always consider the particular facts of a case.  For
> example, if a medically required hand-held assistive
> device is needed only for prolonged ambulation,
> walking on uneven terrain, or ascending or
> descending slopes, the unskilled sedentary
> occupational base will not ordinarily be significantly
> eroded.

Soc. Sec. Ruling 96-9p .

Here, the ALJ did not take into consideration the cane or plaintiff's

statement that the cane was prescribed by his doctor.[6]  The defendant

---

[6]  The ALJ's decision indicates that he found that plaintiff was not
credible with regard to the extent of his limitations, but he did not indicate
that he thought plaintiff was not credible in stating that Dr. Reish prescribed
the cane.  (R. at 20).  In fact, the ALJ noted that plaintiff in fact does use a
cane.  (R. at 21).

argues that the ALJ did not have to consider the evidence of the cane because the plaintiff had not established that it was medically necessary. The ALJ, however, did not provide that justification.

The ALJ has a duty to hear and evaluate all relevant evidence to determine whether an applicant is entitled to disability benefits.  Cotter v. Harris, 642 F.2d 700,704 (3d Cir. 1981).   Additionally, an ALJ must provide a reason for rejecting evidence in support of a claim.  Id., 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether reasons for the rejection were improper.")(internal citation omitted).  Here, the ALJ provided no reason for not including the cane in his RFC or in his question to the Vocational Expert.

Defendant also argues that even if plaintiff does medically require a cane, it would have little impact on his ability to perform the unskilled jobs that the Vocational Expert identified.  While this may be true, there simply is no evidence in the record to support this assertion.  Thus, we cannot affirm the decision of the ALJ on this basis.

15

In conclusion, we find that plaintiff presented evidence that he needs to use a cane.  The ALJ, without explanation, ignored this evidence in making his decision.  Thus, it is appropriate to remand this case back to the defendant for further consideration of the evidence that plaintiff needs a cane.

## II. Evidence of Record

The second issue plaintiff raises is whether the ALJ evaluated all the relevant evidence of record.  Plaintiff argues that the ALJ improperly ignored multiple reports from his primary physical therapist, Shawna Pringle, DPT.  Pringle treated plaintiff numerous times from the date of the accident until the date of the surgery, October 2009 to April 2010.  Another physical therapist, David Hoy, MS, PT, treated him up to the time of his discharge.  (R. at 421-23).  Hoy's records indicate that plaintiff had not met many of the long term therapy goals.  (R. at 422).   Plaintiff argues that the records of Pringle and Hoy support his claim for disability but were ignored improperly by the ALJ.

The ALJ does not discuss this evidence in his decision.  Plaintiff asserts that this is an error because, like the cane discussed above, while the ALJ need not accept the opinion of the therapists, he cannot dismiss it

without explaining his reasoning.   We agree.  The law provides that "The ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits. The ALJ's decision must be in writing and contain findings of fact and a statement of reasons in support thereof.  20 C.F.R. § 404.939 (1980)." Cotter, 642 F.2d at 704 (internal footnote omitted). The ALJ will be provided the opportunity to address this evidence during the remand.[7]

**Conclusion**

As set forth above, the ALJ did not take into consideration that the plaintiff uses a cane with either his residual functional capacity or the question he asked the vocational expert.  Accordingly, we find that the Vocational Expert's testimony does not provide substantial evidence to support the ALJ's conclusion.  The ALJ also failed to give reasons for ignoring certain evidence such as the records from various physical

---

[7] Plaintiff also argues that the ALJ improperly used evidence that plaintiff could walk and ride a bicycle for short periods as evidence that plaintiff could work.  We agree. The law provides, that "sporadic or transitory activity does not disprove disability." Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981).  Additionally, the plaintiff argues that the ALJ did not properly address the opinion of Dr. Potera.  Upon remand the ALJ should allow the plaintiff to make his arguments about Dr. Potera's evidence.

17

therapists and the cane evidence.  We will remand this action to the ALJ

for further consideration consistent with this memorandum.  An appropriate

order follows.

**Date: May 1, 2014**                    **s/ James M. Munley**
                                         **Judge James M. Munley**
                                         **UNITED STATES DISTRICT COURT**